**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CANNABIS DEVELOPMENT COMPANY LLC, a California limited liability company,<br><br>                Plaintiff,<br><br>  v.<br><br>LUCIUS DWANYE MCDADE, Jr.,<br>an individual,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Cannabis Development Company LLC ("CannDevCo"), for its Verified Complaint for Injunctive and Other Relief against Defendant Lucius Dwanye McDade, Jr. ("McDade"), states as follows:

**Nature of the Action**

1. An individual who met the qualifications to secure a special state-issued license partners with a company to finance and manage the licensing process and, together, open a business. The funding company expends vast amounts of time, energy and money managing the logistics in obtaining the license and developing the business. After securing the license and the benefit of a business plan and early development, the individual abandons his funding partner to extract a better pay day with another.

2. The individual/license applicant – Defendant Lucius Dwanye McDade, Jr. ("McDade") –qualified as a Social Equity License Applicant to receive a state-awarded license to run and operate a cannabis store in the State of Illinois. Plaintiff Cannabis Development Company LLC ("CannDevCo") agreed to, and did, fund and manage the application process

and, after obtaining the license with and for McDade, began developing their joint cannabis business. Opening and operating a cannabis retail store requires an extraordinary investment in facilities, equipment, suppliers and personnel. Many eligible Social Equity License Applicants lack sufficient financial resources to invest in and operate such a business.

3. But with the license now secure and business development well underway, McDade terminated his relationship with CannDevCo to pursue a different deal. Among other things, CannDevCo seeks to enjoin McDade from transferring, conveying or otherwise encumbering the license CannDevCo funded and worked to obtain.

## Parties

4. Plaintiff CannDevCo is a California limited liability company, with its principal place of business in Los Angeles County, California. CannDevCo's sole member is Kimble Canon, a resident of New York. CannDevCo owns and operates state-sanctioned cannabis dispensaries. Among other things, CannDevCo identifies individuals qualified to enter into social equity cannabis dispensary licensing programs in various states and thereafter, partners with those individuals to apply for licenses and operate dispensaries.

5. Defendant Lucius Dwanye McDade, Jr., is an individual who at all relevant times resided in Cook County, Illinois. McDade partnered with CannDevCo to participate in the Illinois social equity cannabis dispensary licensing program.

## Jurisdiction and Venue

6. This is a civil action brought pursuant to 28 U.S.C. §1332(a) (1) between citizens of different states where the matter in controversy exceeds $75,000, exclusive of interest and costs.

7. This civil action is brought in the United States District Court for the Northern

District of Illinois pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the claims arose in the Northern District of Illinois, and the defendant resides in this District.

## Facts Supporting Relief

**A.     The Cannabis Regulation and Tax Act.**

8.     In 2019, the Illinois legislature enacted the Cannabis Regulation and Tax Act ("CRTA" or the "Act"), 410 ILCS 705, *et seq*. Under CRTA, effective January 1, 2020, the State of Illinois legalized recreational cannabis use, or "adult-use."

9.     CRTA vests the Illinois Department of Financial and Professional Regulation (the "IDFPR") with discretion to adopt and enforce rules required for the Act's administration, as well as the licensing and regulation of dispensaries. The IDFPR has the authority create and implement license application and award processes.

10.     In 2022, the IDFPR announced its intention to award fifty-five (55) Conditional Licenses through a "Social Equity Lottery." The application submission deadline was extended with a final deadline set of April 21, 2023. The Social Equity Lottery process is governed by IDFPR promulgated regulations (the "Regulations"). *See e.g.*, 66 IAC 1291.10 and 66 IAC 1291.400 to 68 IAC 1291.440.

11.     Pursuant to the Regulations, applicants were to submit applications via an online portal and were required to submit only basic preliminary qualifying information. Qualified applicants are limited to one application and one license each.

12.     With respect to the application process, the IDFPR (1) publishes a list of applicants eligible for the Social Equity Lottery; (2) conducts the Social Equity Lottery involving eligible applicants; (3) identifies the "Top Participants" (defined as "an applicant drawn by lot in a winning slot such that it has the opportunity to be issued a conditional

3

license"); (4) allows the Top Participants to "prove up" their Social Equity status; and finally, (5) awards Conditional Licenses to "proved up" Top Participants.

13. Social Equity status requires the applicant to be 51% owned or controlled by one or more individuals who each meet one of the requirements from Criteria A and one of the requirements from Criteria B.

14. Criteria A relates to residency. To meet one of the Criteria A requirements, the 51% owner/controlling partner(s) must have resided for a total of five of the past ten years in an eligible census tract.

15. To meet one of the Criteria B requirements, the 51% owner/controlling partner(s) must have either: (1) been arrested for, convicted of, or adjudicated delinquent for a qualifying cannabis related offense; (2) have a family member who has been arrested for, convicted of, or adjudicated for a qualifying cannabis related offense; or (3) been a victim of a firearm injury.

**B.     CannDevCo Partners with McDade.**

16. In early 2023, CannDevCo was introduced to McDade. McDade presented credentials showing he met the IDFPR's criteria and was qualified to participate in the Social Equity Lottery. McDade was not previously familiar with the Social Equity Lottery Program (occasionally, the "Program"). CannDevCo shared information about the Program with McDade; McDade relied heavily on CannDevCo's knowledge and experience in the cannabis space.

17. More specifically, beginning in February 2023, CannDevCo provided McDade with information about the Social Equity Lottery. CannDevCo also proposed an arrangement pursuant to which CannDevCo would undertake all the work in securing the license and opening

4

the business and incur all expenses qualifying McDade as a Social Equity Applicant as defined in the Program.

18. If McDade was successful in securing a Social Equity License, CannDevCo agreed to develop and open a cannabis dispensary with McDade and pay McDade various sums, including: (i) an initial cash payment upon McDade providing CannDevCo with all documentation needed to qualify for the Social Equity Lottery; (ii) an annual salary of $40,000 paid quarterly each year the dispensary operates with 3% annual salary increases; and (iv) a payment of $150,000 paid if CannDevCo purchased the cannabis license from McDade in the future.

19. On March 3, 2023, CannDevCo and McDade entered into a Cannabis Retail Venture Agreement reflecting the foregoing terms, among others, which they modified. A true and accurate copy of the revised Cannabis Retail Venture Agreement ("Agreement") is attached as Exhibit 1.

20. As provided in the Agreement, CannDevCo prepared, submitted and paid for McDade's Lottery application for the central region of Illinois. CannDevCo's representative was identified as a point of contact for the IDFPR.

21. The Program has strict deadlines once conditional licenses are awarded and requires recipients of such licenses to submit supporting documentation, as well as identify and secure real estate for the cannabis retail storefront. McDade recognized and agreed to cooperate with CannDevCo in that regard:

> [McDade] understands that the Program has strict deadlines and requirements and …agrees to provide requested information and supporting documentation promptly to CannDevCo and to tell CannDevCo the truth about any information reasonably requested in connection with the transactions contemplated by….

Agreement at ¶9.

22. Because of the strict deadlines and timing requirements, CannDevCo and McDade "agre[ed] and covenanted that…[they] shall promptly execute and deliver…such further instruments and documents…to carry out the full intent and purpose of [the] Agreement…." Agreement at ¶10.

23. Because CannDevCo was fronting all the money related to this joint venture, McDade provided CannDevCo with additional assurances, expressly agreeing <u>not</u> to take the following actions:

> (a) modify the username or password to the [McDade]'s Online Services Portal, (b) modify the email address, phone number or any personally identifiable information on the [McDade]'s Online Services Portal, (c) file or submit any Social Equity Applicant verification or 2023 Cannabis Lottery registration withdrawal, amendment or modification with the State of Illinois or IDFPR, (d) file or submit any cannabis application in connection with the 2023 Cannabis Lottery with the State of Illinois or IDFPR, or (e) file or submit any cannabis application withdrawal, amendment or modification related to the cannabis retail storefront license and the resulting cannabis enterprise with the State of Illinois or IDFPR, including but not limited to, ownership structure, removal of owner(s), business entity substitution, or business premises relocation.

Agreement at ¶11.

24. Finally, McDade expressly agreed not to "circumvent, avoid, bypass, or obviate, directly or indirectly, the intent of [their] Agreement and/or the efforts or interests of CannDevCo under [the] Agreement, including without limitation by entering into or seeking to enter into an agreement that may conflict or be inconsistent with this Agreement or the transactions contemplated hereby with any person or entity." Agreement at ¶12.

**C.     CannDevCo and McDade are Successful in Securing the Social Equity License.**

25. As part of the application process, CannDevCo formed and paid for the formation of an Illinois limited liability company (the "LLC") for the sole purpose of applying for the Conditional Adult Use Dispensing Organization License (occasionally, the "License").

CannDevCo made McDade the sole member of the LLC insofar as McDade qualified as a social equity applicant.

26. On July 13, 2023, McDade and the LLC were selected by the IDFPR as one of the 55 "Top Participants" in the Social Equity Criteria Lottery and the sole Lottery selection for a central region of Illinois. There are a limited number of retail cannabis dispensaries operating each Illinois region. McDade and the LLC were conditionally qualified to receive a cannabis dispensary license for this region. *See* IDFPR Notice attached as Exhibit 2.

27. Following the initial selection, the IDFPR required further documentation from McDade to confirm his status as a Social Equity Applicant. To that end, CannDevCo worked with McDade to obtain and submit the required documentation, all as the parties agreed in their Agreement. Agreement at ¶¶4, 9.

28. During the documentation period, the IDPFR notified the LLC of various deficiencies in the documentation submitted by McDade. For example, in November 2023, the IDPFR served notice that McDade had unpaid Illinois state taxes, rendering the Program application deficient. In December 2023, CannDevCo paid McDade's past due taxes and obtained a clearance letter from the Illinois Department of Revenue to submit to the Program and proceed with the parties' efforts to secure the Social Equity License.

29. Throughout the remainder of 2023 and 2024, CannDevCo worked to cure various other deficiencies in the documentation submitted by McDade and the LLC. During this time, McDade demanded payments from CannDevCo to which CannDevCo acquiesced. CannDevCo and McDade agreed the payments made to McDade were advances against monies due to McDade under the Agreement once the cannabis business was up and running.

7

30. On April 18, 2024, the IDPFR advised McDade and the LLC they had qualified for a conditional license after "review of…Criteria A and B documentation."

31. On June 7, 2024, the IDFPR provided formal notice that the LLC and McDade had been issued the sole and exclusive Conditional License for an entire central Illinois region. Thereafter, the LLC had 180 days to identify a qualifying location for a cannabis dispensary. The Conditional License expires on June 8, 2025.

32. Given the deadlines and time restrictions incident to the award of a Conditional License, CannDevCo attempted to contact McDade multiple times regarding efforts to secure a qualifying location for the cannabis dispensary. McDade refused and failed to respond. At the time, McDade had changed his telephone number and disabled his email so that CannDevCo was not able to contact him at all. McDade, or someone acting on McDade's behalf, apparently contacted the IDFPR and requested the removal of CannDevCo's representative as a contact person for the LLC.

33. On September 30, 2024, an uncle and confidant of McDade, Jacobi McDade ("Jacobi"), provided CannDevCo with McDade's new phone number and, shortly thereafter, McDade resumed communications with CannDevCo.

34. On October 21, 2024, McDade agreed to a dinner meeting with CannDevCo representatives, but only after CannDevCo agreed to pay McDade for his time, which it did.

35. On October 22, 2024, McDade, Jacobi and CannDevCo's representative met for dinner at the Chicago Firehouse Restaurant and reviewed the parties' contractual relationship, obligations to one another and commitment to the venture going forward. McDade provided assurances that he would cooperate as required to move the license process forward.

36. Between October 2024 to February 2025, CannDevCo employees travelled to central Illinois on several occasions to view real estate, negotiate with landlords for potential dispensary locations, and confer with zoning commission representatives.

37. Throughout December 2024 and January 2025, CannDevCo provided McDade additional cash advances against future earnings, all at McDade's request.

38. In January 2025, CannDevCo identified and selected a location for a dispensary. Thereafter, CannDevCo engaged an architect to prepare renderings and plans for a build-out sufficient to obtain Illinois regulatory approvals. At the time, CannDevCo was advised by a regional zoning commission official that it will take approximately three months to get the local zoning approved as a conditional use permit is required.

39. On January 28, 2025, CannDevCo advised McDade that he needed to sign a new Principle Officers Form and submit fingerprints as the next state required step for approval of the dispensary location.

40. On January 30, 2025, after demanding and receiving additional monies from CannDevCo, McDade told CannDevCo he had traveled to the fingerprinting office but that the person responsible for taking the fingerprints was not present. Contrary to this assertion, the fingerprinting company reported McDade never showed up to get fingerprinted.

41. On January 31, 2025, CannDevCo again requested McDade to get to the fingerprinting office and paid his travel expenses in advance. McDade agreed but once again never showed up.

42. Between February 4 and February 14, 2025, CannDevCo attempted to contact McDade through text messages and phone calls about concluding the license required

9

fingerprinting process. McDade did not respond. *E,g.,* February 2025 Text Messages attached as Exhibit 3.

43. Finally, on March 2, 2025, McDade picked up the phone when CannDevCo called yet again. During that call, McDade told CannDevCo that he decided to not cooperate with CannDevCo in obtaining a license and that he had a relationship with a "local person" in the cannabis industry with whom he intended to work on the license secured by CannDevCo. Shortly thereafter, McDade blocked CannDevCo from texting or calling his number.

44. Because CannDevCo had fronted all of the monies and undertook all of the work to secure the License, McDade, in turn, agreed he would "not sell, transfer or otherwise encumber the…license obtained under the Program…." Agreement at ¶7. Indeed, if McDade desired to sell or transfer the License, CannDevCo was granted "a right of first refusal…." *Id*.

45. Despite repeated assurances by McDade that he would follow through with the opening of a cannabis storefront with CannDevCo upon securing a License, McDade apparently has entered, or is attempting to enter into, an agreement with another individual or entity to sell or transfer his interest in the License or otherwise exclude CannDevCo from recovering its investment or participating in the development and use of the License. Absent immediate injunctive relief, CannDevCo will be deprived of the opportunity to recover all of the monies it loaned to McDade, the monies advanced to secure the License, the monies used to develop the store opening, and more.

## Claims for Relief

### Count I
### (Scheme to Defraud)

46. CannDevCo repeats and realleges the allegations set forth in paragraphs 1-45 above, as if the same were fully set forth herein.

47. At the time McDade partnered with CannDevCo and signed the Agreement, gave repeated assurances of his commitment to CannDevCo and their relationship, received

advances from CannDevCo for their joint venture and allowed CannDevCo to proceed with 100% of the funding and undertaking the extensive work to secure the License and begin the development of a store so that the parties could proceed with opening and operating a dispensary, McDade knew his representations to CannDevCo to be false. Indeed, McDade, through his words, conduct or both, made these representations and took these actions in an effort to deceive CannDevCo and wrongfully obtain the License so that he could subsequently partner with another party for a greater financial return (the "Fraudulent Scheme" or "Scheme").

48. At all relevant times, McDade knew his conduct violated the Agreement and he had no right to abscond with the License secured by CannDevCo for his own personal benefit.

49. CannDevCo had a right to, and did, rely on McDade's representations and conduct when it entered into the Agreement, along with McDade's subsequent representations, assurances and conduct, and subsequently secured the License for McDade, secured real estate and began the development of the cannabis store.

50. Upon information and belief, McDade concealed his true intentions and the existence of third party(-ies) with whom he intended to benefit by CannDevCo's time, money and energy and at CannDevCo's expense.

51. As a result of the Fraudulent Scheme perpetrated by McDade, CannDevCo was injured in amounts to be proven at trial.

52. The conduct of McDade relating to his fraud was, at all times, undertaken in a knowing way, displaying utter indifference to CannDevCo's known rights and justifying the recovery of punitive damages.

WHEREFORE, Plaintiff Cannabis Development Company LLC, respectfully requests this Court:

    a) Enter a temporary restraining order, and thereafter a preliminary and permanent injunction, enjoining McDade from entering into an agreement that impairs, in any way, CannDevCo's contractual rights under the Agreement;

    b) Enter a temporary restraining order, and thereafter a preliminary and permanent injunction, enjoining McDade from encumbering, transferring, pledging, selling or otherwise disposing, in any way, of the License until further Order of this Court;

    c) Enter a mandatory injunction requiring McDade to reinstate CannDevCo's representative as a contact person for the license opportunity with the IDFPR and thereafter, a preliminary and permanent injunction enjoining McDade from removing the CannDevCo representative until further Order of this Court;

    d) Award CannDevCo compensatory damages in an amount to be proven at trial;

    e) Award CannDevCo reasonable attorneys' fees and costs incurred in this action; and

    f) Grant such other and further relief that this Court deems equitable and just.

## Count II
### (Breach of Contract)

53. CannDevCo repeats and realleges the allegations set forth in paragraphs 1-52 above, as if the same were fully set forth herein.

54. The Agreement between CannDevCo and McDade is a valid and binding contract.

55. McDade has breached the Agreement by:

    a. refusing to communicate or cooperate with CannDevCo;

    b. failing to provide requested information and/or documentation to CannDevCo.;

    c. failing to take action necessary to carry out the full intent and purpose of the Agreement;

    d. modifying the Online Services Portal and/or modifying information relevant to the Online Services Portal and necessary to communicate to IDPFR;

    e. circumventing, avoiding, bypassing, or obviating the intent of the Agreement;

   f. entering into or seeking to enter into an agreement with a third party that conflicts with the Agreement;

   g. selling or attempting to sell or transfer the License without CannDevCo's consent; and

   h. otherwise failing to perform his obligations under the Agreement.

58. CannDevCo has performed all of its obligations under the Agreement.

59. As a direct and proximate cause of McDade's breaches and anticipated continued breaches of the Agreement, CannDevCo has suffered damages and will suffer future damages in an amount to be proven at trial. The only means by which CannDevCo can recover the monies it expended on McDade's and their joint venture's behalf is to secure the necessary License and open a dispensary. McDade's breaches and other conduct have made that not possible.

WHEREFORE, Plaintiff Cannabis Development Company LLC, respectfully requests this Court:

  a) Enter a temporary restraining order, and thereafter a preliminary and permanent injunction, enjoining McDade from entering into an agreement that impairs, in any way, CannDevCo's contractual rights under the Agreement;

  b) Enter a temporary restraining order, and thereafter a preliminary and permanent injunction, enjoining McDade from encumbering, transferring, pledging, selling or otherwise disposing, in any way, of the License until further Order of this Court;

  c) Enter a mandatory injunction requiring McDade to reinstate CannDevCo's representative as a contact person for the license opportunity with the IDFPR and thereafter, a preliminary and permanent injunction enjoining McDade from removing the CannDevCo representative until further Order of this Court;

  d) Award CannDevCo compensatory damages in an amount to be proven at trial;

  e) Award CannDevCo reasonable attorneys' fees and costs incurred in this action; and

  f) Grant such other and further relief that this Court deems equitable and just.

## Count III
### (Alternatively, Unjust Enrichment)

60. CannDevCo repeats and realleges the allegations set forth in paragraphs 1-18, 20, 25-26, 28-43 and 45 above, as if the same were fully set forth herein.

61. CannDevCo assumed full financial responsibility for securing a License that was awarded to an entity wholly owned by McDade and while developing the cannabis store for CannDevCo's and McDade's benefit.

62. CannDevCo conferred a benefit on McDade by securing the License for the LLC, a company created by CannDevCo that made McDade the sole and exclusive member, and by developing the cannabis store.

63. McDade directly benefited from the monies and efforts conferred by CannDevCo.

64. It would be inequitable and unjust for McDade to retain the benefits conferred upon him by CannDevCo without just compensation to CannDevCo.

65. McDade's receipt of the License through the funding and work of CannDevCo to the detriment of CannDevCo offends fundamental principles of justice, equity and good conscience.

WHEREFORE, Plaintiff Cannabis Development Company LLC, respectfully requests this Court:

   a) Enter a temporary restraining order, and thereafter a preliminary and permanent injunction, enjoining McDade from entering into an agreement that impacts, in any way, CannDevCo's contractual rights under the Agreement;

   b) Enter a temporary restraining order, and thereafter a preliminary and permanent injunction, enjoining McDade from encumbering, transferring, pledging, selling or otherwise disposing, in any way, of the License until further Order of this Court;

   c) Enter a mandatory injunction requiring McDade to reinstate CannDevCo's representative as a contact person for the license opportunity with the IDFPR and thereafter, a preliminary and permanent injunction enjoining McDade from removing the CannDevCo representative until further Order of this Court;

d) Award CannDevCo compensatory damages in an amount to be proven at trial;

e) Award CannDevCo reasonable attorneys' fees and costs incurred in this action; and

f) Grant such other and further relief that this Court deems equitable and just.

                          **CANNABIS DEVELOPMENT COMPANY LLC**

                          By: */s/ Patrick G. Cooke*
                                One of its attorneys

Patrick G. Cooke (ARDC No. 6229059)
Michael W. Drumke (ARDC No. 6210473)
Benjamin D. Lothson (ARDC No. 6330050)
Swanson, Martin & Bell, LLP
330 North Wabash Avenue, Suite 3300
Chicago, Illinois 60611
(312) 321-9100
(312) 321-0990 – Fax
mdrumke@smbtrials.com
pcooke@smbtrials.com
blothson@smbtrials.com